UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLYN PLUMMER,

                              Plaintiff,

      -against-

NEW YORK PROPERTY INSURANCE
UNDERWRITING ASSOCIATION, and NEW
YORK STATE DIVISION OF HUMAN RIGHTS,

                              Defendants.

No. 20-CV-4805 (NSR)
OPINION & ORDER

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/14/2022____

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Nicolyn Plummer ("Plaintiff") brings this *pro se* action against the New York Property Insurance Underwriting Association ("NYPIUA") and the New York State Division of Human Rights ("DHR" together, "Defendants") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (ECF No. 1.) Presently before the Court is NYPIUA's motion to dismiss (ECF No. 33) and DHR's motion to dismiss (ECF No. 38.) For the following reasons, Defendants' motions are GRANTED.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and opposition to the instant motion,[1] and are construed in the light most favorable to Plaintiff, the non-movant, and accepted as true for purposes of this motion.

In the summer of 2010, the roof of Plaintiff's house was damaged by a storm. (Compl. at 5.) Plaintiff contacted NYPIUA regarding reimbursement for the repairs, and she was directed to

---

[1] The Court may consider new facts raised in the *pro se* Plaintiff's opposition papers that are consistent with the Complaint. *See, e.g., Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("Because Davila is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint").

the NYPIUA website to fill out the required form.  (Plaintiff's Opposition to Defendants' Motions to Dismiss ("Opp.") ECF No. 36 at 2.)  Plaintiff struggled with the online form and called NYPIUA back, who sent her a "statement of facts and occurrence" form.  (*Id*.)  Plaintiff completed the form and collected receipts and the relevant permit.  (*Id*.)  Plaintiff then requested an in-person meeting with NYPIUA "[b]ecause of the nature of the case and the complexity factors."  (Compl. at 5.)  Plaintiff has severe hearing difficulties which cause her to have problems communicating with others, and so Plaintiff requested communication access realtime translation ("CART") services for the meeting.  (*Id*.; Opp. at 2.)  NYPIUA refused to allow Plaintiff to make an in-person presentation about her claim, and stated it would not have an in person meeting with CART services until after the roof inspector examined Plaintiff's property.  (Opp. at 2.)

On February 4, 2017, the inspection of the roof was completed, but Plaintiff never received a follow-up in-person meeting appointment as promised.  (*Id*.)  On February 10, 2017, Plaintiff received a denial letter stating that there was no covered cause of loss.  (*Id*. at 3.)  Prior to July 11, 2017, Plaintiff contacted NYPIUA and requested an in-person meeting with CART services, but NYPIUA responded that it would be useless and frivolous, and that Plaintiff failed to explain why email or telephone conversations were insufficient to accommodate her disability.  (*Id*.)

On or around January and February of 2017, Plaintiff complained to NYPIUA about its failure to accommodate her disability and its coverage determination.  (*Id* at 4.)  On February 10, 2017, Plaintiff was instructed to contact the New York State Department of Financial Services ("DFS").  (*Id*.)  Plaintiff had an in-person meeting with DFS, but it was limited to the decision to deny her coverage.  (*Id*.)  It did not address the denial of her requested in-person meetings.  (*Id*.)

On February 8, 2018, Plaintiff filed a complaint against NYPIUA with DHR alleging unlawful discriminatory practices in relation to public accommodation.  (*Id*.)  On or around August 17, 2018, Plaintiff received a Determination and Order After Investigation from DHR which stated

that it found no probable cause to believe NYPIUA had engaged in the unlawful discriminatory practice complained of.  (*Id.* at 5.)  She attempted to communicate with DHR to schedule an in-person meeting with CART services to discuss her grievance against NYPIUA, but never received a call back.  (*Id.* at 4.)

Plaintiff filed suit on June 23, 2020.  (ECF No. 1.)  Plaintiff is requesting the Court "order NYPIUA to compensate [her] for the roof replacement and to cover the remaining balance."  (*Id.* at 6.)  On June 25, 2021, Plaintiff received DHR's Final Investigation Report and Basis of Determination, which states that NYPIUA fulfilled its obligation to accommodate Plaintiff by communicating through the phone or by email.  (Opp. at 4.)  Defendants each filed motions to dismiss on October 6, 2021.  (ECF Nos. 33 & 38.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 662, 678 (quoting

*Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Further, courts must interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted).  Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Plaintiff asserts claims under both Title II and Title III of the ADA.  (Compl. at 2.)  The Court will evaluate each of Plaintiff's claims below.

### I.     Title II of the ADA

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane,* 541 U.S. 509, 516–17 (2004).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A "public entity" includes "any State or local government" and "any department, agency, special purpose district, or

other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1).

To establish a violation of Title II, a plaintiff must show that (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [his or her] disabilities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003).  "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal citations and quotation marks omitted).

"The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled." *Felix v. New York City Transit Auth*., 324 F.3d 102, 107 (2d Cir. 2003).  A reasonable accommodation "gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta D.*, 331 F.3d at 282 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).  The determination of what constitutes a reasonable accommodation is a "highly fact-specific, case-by-case inquiry." *Mary Jo C. v. New York State & Local Ret. Sys*., 707 F.3d 144, 165 (2d Cir. 2013) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)).  "[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Henrietta D.*, 331 F.3d at 277.

Here, NYPIUA first avers that it is not a public entity and therefore does not fall within the purview of Title II.  (Defendant New York Property Insurance Underwriting Association's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) ("NYPIUA Mem.") ECF No. 35 at 7.)  Plaintiff appears to concede this point.  (Opp. at

6.)  However, the parties agree that DHR is a public service, and therefore Plaintiff's claim against it falls under Title II.  (*Id*. at 8; Memorandum of Law in Support of Defendant New York State Division of Human Rights' Motion to Dismiss the Complaint ("DHR Mem.") ECF No. 40 at 8.) DHR avers that it did not deny Plaintiff an opportunity to access or benefit its services, programs or activities as she was able to participate in the investigative process by providing facts and evidence in written and documentary form.  (DHR Mem. at 8-9.)  The Court agrees.

"The ADA . . . does not authorize a preference for disabled people generally."  *Felix*, 324 F.3d at 107.  Nothing in Plaintiff's Complaint or opposition demonstrates that her disability made it difficult to access any benefits or services typically given to able-bodied individuals.  Indeed, Plaintiff alleges that she requested an in-person meeting "to explain her grievance against NYPIUA" which was needed "both to allow her to understand the process and the positions that DHR was taking and to allow her to make an effective presentation of her position."  (Opp. at 4.) Plaintiff does not allege that in-person meetings are generally provided to individuals that file grievances, instead she admits that "DHR uses written communication for most investigations." (*Id*. at 8.)

Nor does she allege how her disability impacted her ability to submit her grievance and related evidence.  *See Gribbin v. N.Y. State Unified Court Sys.*, No. 18-CV-6100 (PKC) (AKT), 2020 WL 3414663, at *6 (E.D.N.Y. June 22, 2020) ("Plaintiff's disability entitles her neither to her preferred outcome nor to a preferential standard"); *Wiltz v. New York Univ.*, No. 1:18-cv-00123 (GHW) (SDA), 2019 WL 721658, at *9 (S.D.N.Y. Feb. 1, 2019) (dismissing ADA claim where the plaintiff was denied "representation/legal assistance and a request for a protective order" because he failed to show that "with or without a disability, he was entitled to [either]").  Instead, Plaintiff alleges the "language was confusing," but she does not discuss how her disability created or exacerbated this confusion.  (Opp. at 9.)  As Plaintiff has failed to show she was denied

6

meaningful access to DHR's services, her claim must be dismissed.

Accordingly, Plaintiff's claims for violations of Title II of the ADA are dismissed with prejudice.

## II.     Title III of the ADA

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  To state a claim for relief under Title III, a plaintiff must allege that (1) "she is disabled within the meaning of the ADA"; (2) "defendants own, lease, or operate a place of public accommodation"; and (3) "defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide."  *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198–99 (S.D.N.Y. 2016) (citing *Camarillo v. Carrols Corp*., 518 F.3d 153, 156 (2d Cir. 2008)).  The only remedy for private plaintiffs under Title III is injunctive relief.  *See, e.g., Krist v. Kolombos Rest., Inc*., 688 F.3d 89, 94 (2d Cir. 2012) ("Title III . . . authorizes private actions only for injunctive relief, not monetary damages.").

Here, Plaintiff is alleging disability discrimination under Title III.  However, the Complaint does not seek injunctive relief, instead it seeks monetary damages.  (Compl. at 6.)  As monetary damages are not available for private plaintiffs under Title III, Plaintiff's claims must be dismissed. *See Vale v. Northwell Health*, No. 17-CV-7111 (PKC)(LB), 2018 WL 1115345, at \*2 (E.D.N.Y. Feb. 26, 2018) ("Because damages are not available under Title III of the ADA, Plaintiff's claim for damages is dismissed"); *Sandler v. Benden*, No. 15-CV-1193(SJF)(AKT), 2016 WL 9944017, at \*16 (E.D.N.Y. Aug. 19, 2016) ("Since plaintiff seeks only monetary relief with respect to her ADA claims, *i.e.*, reimbursement of her tuition, compensatory and punitive damages and attorney's

fees, the amended complaint fails to state a plausible claim for relief under Title III of the ADA.").

While Plaintiff avers in her opposition that she is seeking injunctive relief and that she should be

able to "pursue her claim for injunctive relief – reconsideration of her claim after she has an

opportunity to make an in-person presentation" (Opp. at 7-8), the Complaint does not contain a

claim for injunctive relief.  "Although courts may rely on factual allegations in a *pro se* plaintiff's

opposition papers in evaluating the legally sufficiency of his [or her] claims, entirely new causes

of actions are not accorded such liberal treatment."  *Shepler v. Collura*, No. 17 Civ. 10254 (ER),

2020 WL 729763, at *5 (S.D.N.Y. Feb. 13, 2020) *see also Pandozy v. Segan*, 518 F. Supp.2d 550,

554 n.1 (S.D.N.Y. 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009) (holding that additional claims

raised in the *pro se* plaintiff's opposition papers would not be considered by the Court on a motion

to dismiss).

Accordingly, Plaintiff's claims for violations of Title III of the ADA are dismissed without

prejudice.

## CONCLUSION

For the foregoing reasons, Defendant New York Property Insurance Underwriting

Association's motion to dismiss is GRANTED and Defendant New York State Division of Human

Rights' motion to dismiss is GRANTED.  As Plaintiff's claim against Defendant New York State

Division of Human Rights is dismissed with prejudice, it is dismissed from this action.

Plaintiff is granted leave to file an Amended Complaint as to any claims that have not been

dismissed with prejudice.  If she chooses to do so, Plaintiff will have until August 15, 2022 to file

an Amended Complaint consistent with this order.  Defendant New York Property Insurance

Underwriting Association is then directed to answer or otherwise respond by August 30, 2022.  If

Plaintiff fails to file an Amended Complaint within the time allowed, and she cannot show good

cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 33 & 38 and terminate the New York State Division of Human Rights as a defendant.  The Clerk of Court is further respectfully directed to mail a copy of this Opinion & Order to the *pro se* Plaintiff at the address listed on ECF, and to show proof of service on the docket.

Dated:     June 14, 2022                                        SO ORDERED:
           White Plains, New York

_____

NELSON S. ROMÁN
United States District Judge